**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0251-22

GARY POLLER,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

SUSANA POLLER,

       Defendant-Respondent/
       Cross-Appellant.

_____

       Submitted January 30, 2024 – Decided April 2, 2024

       Before Judges Enright and Paganelli.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0655-20.

       Mandelbaum Barrett, PC, attorneys for appellant/cross-respondent (Lynne Strober and Rebecca Emily Frino, on the briefs).

       Moskowitz Law Group, LLC, attorneys for respondent/cross-appellant (Eilish M. McLoughlin and Daniel Pelic, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Gary Poller appeals from an August 19, 2022 order denying his motion to terminate his alimony obligation to defendant Susana Poller.[1]  Susana opposes the appeal and cross-appeals from that part of the order denying her request for attorney's fees and costs.  We find no abuse of discretion, and affirm substantially for the reasons articulated by Judge Magali M. Francois in her comprehensive oral opinion.

We glean the relevant facts from the motion record.  The parties married on April 10, 2010.  In September 2019 Gary filed for divorce.  The parties entered into a Marital Settlement Agreement (MSA) on April 8, 2021, which was incorporated into a Judgment of Divorce (JOD) entered on April 23, 2021.

The MSA provides that Gary is required to pay Susana $200,000 per year in alimony for five years.  The MSA further provides "[i]f [Susana] undertakes cohabitation with another person in a relationship which is tantamount to marriage, [Gary] may make an application to terminate or suspend alimony, consistent with the New Jersey statute and case law.  Cohabitation shall be defined by New Jersey law at that time."

---

[1]  Since the parties share a common last name, we refer to them by their first names.  We intend no disrespect.

Gary filed a motion to terminate alimony or, in the alternative, sought discovery on the issue; he also moved for Susana to pay his attorney's fees. Susana opposed his motion and cross-moved for Gary to pay her attorney's fees.

The judge determined Gary failed to establish Susana's cohabitation, and failed to make a prima facie showing of cohabitation sufficient to warrant discovery. In addition, she found that neither party was responsible to pay the other's attorney's fees.

In addressing the issue of cohabitation, the judge noted Susana had a "dating relationship—a boyfriend." Considering the facts under N.J.S.A. 2A:34-23(n), the judge concluded the dating relationship fell short of cohabitation because Susana and her boyfriend were "not relying on each other as married people." She found: (1) they had no joint bank account; (2) their monetary transfers were "de minimis"; (3) there was no evidence of their sharing payment of bills; (4) they enjoyed no vacations together; (5) they did not spend Susana's birthday together; (6) no evidence of shared overnights; (7) no evidence of Susana being in the boyfriend's apartment; (8) no financial reliance between them; (9) the boyfriend's clearing of snow, one time, at her home did not amount to him participating in household chores; (10) the boyfriend was not taking care of Susana's property, her home or her children; (11) Susana and her boyfriend

3

did not comingle funds; and (12) their relationship ended.  Therefore, the judge denied Gary's motion, finding his proofs of Susana's dating relationship fell short of a prima facie showing of cohabitation.

In addition, the judge denied, as relevant here, Susana's request for attorney's fees.  The judge applied the factors set forth in Rule 5:3-5(c) and found:  (1) the parties were in a financial position to pay their own attorney's fees; (2) Gary did not file the motion in bad faith; and (3) no fees were previously assessed in the matter.  Also, the judge considered the "result obtained" and that the amount of fees was "reasonable."  The judge concluded Susana should pay her own attorney's fees. On appeal, Gary contends the judge "failed to properly address and weigh the entirety of the statutory factors."  He argues since Susana "never provided any bills or a financial disclosure," the judge erred in finding no bills were shared; there were no joint accounts; and there was no financial "intertwinement."  Further, he asserts Susana's domestic violence final restraining order against him should have been considered by the judge because it "wholly precluded" his investigation into her cohabitation, except through the use of a private detective.

Moreover, Gary asserts he offered ample proof of cohabitation under the pertinent statutory factors.  He argues:  (1) he demonstrated financial transfers

and, thereby, satisfied one or two of the statutory factors; (2) he saw Susana's boyfriend in court during the parties' domestic violence matter; (3) friends and family saw Susana and her boyfriend together; (4) on social media, Susana and her boyfriend identified themselves as being in a relationship, and posted pictures individually, as a couple, and of the other's children; (5) Susana and her boyfriend had daily contact and spent holidays together; (6) her boyfriend:  (i) hung Christmas lights on the roof of Susana's home; (ii) spent "significant time" at Susana's residence when she was not at home; (iii) drove Susana's vehicle and transported the parties' daughter; and (iv) brought shopping bags and flowers to the home.

Gary argues the judge "assigned a vague, ill-defined burden to [his] application" that went "well beyond that envisioned by the prima facie standard" and he was not required to "make a prima facie showing as to each statutory factor identified in N.J.S.A. 2A:34-23(n)," citing Temple v. Temple, 468 N.J. Super. 362 (App. Div. 2021).  Moreover, he argues he should have been given the benefit of all reasonable inferences that could have been drawn from the evidence, again citing Temple.

Further, Gary argues the parties' conflicting certifications created genuine issues of material facts that should have been resolved by way of a plenary

hearing. Therefore, he requests the judge's order be reversed and this matter be remanded for discovery and a plenary hearing.

Susana counters the judge considered the statutory factors and "correctly concluded that [Gary] had not presented evidence sufficient to make a prima facie case of cohabitation." Moreover, she asserts there was "no dispute as to material facts which would [have] necessitate[d] a plenary hearing."

Additionally, Susana contends the judge erred in denying the payment of her attorney's fees. She argues the judge "erroneously placed most weight on the parties' ability to pay." While recognizing she receives income from alimony at the rate of $200,000 per year, she notes these payments are only for five years, "a limited duration"; and Gary "was in a far better financial position to pay fees" than she was.

Moreover, Susana contends the judge erred in finding Gary's motion was not filed in bad faith. She argues that only months after the divorce was finalized, he was checking her Facebook posts. Further, he set up surveillance to watch her residence twenty-four hours per day, seven days a week for four months. In addition, he had access to her bank records from the entry of the JOD until the filing of the motion.

A-0251-22

Finally, Susana argues the judge erred in not considering she was awarded fees in connection with the domestic violence trial granting a final restraining order against Gary.

Gary argues the judge did not abuse her discretion in denying Susana's application for attorney's fees and the decision should remain undisturbed. He notes the judge specifically relied upon Rule 5:3-5(c), and made findings of fact and conclusions of law which adequately justified her decision.

Our review of a Family Part order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere . . . ." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). An appellate court will reverse only where it finds the trial judge clearly abused his or her discretion, "such as when the stated 'findings were mistaken[,] . . . the determination could not reasonably have been reached on credible sufficient evidence present in the record[,]' or the judge 'failed to consider all of the controlling legal principles[.]'" Clark v. Clark, 429 N.J.

Super. 61, 72 (App. Div. 2012) (alterations in original) (quoting <u>Gonzalez-Posse</u> <u>v. Ricciardulli</u>, 410 N.J. Super. 340, 354 (App. Div. 2009)). However, "all legal issues are reviewed de novo." <u>Ricci v. Ricci</u>, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing <u>Reese v. Weis</u>, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Here, the parties' MSA provides "[i]f [Susana] undertakes cohabitation with another person in a relationship which is tantamount to marriage, [Gary] may make an application to terminate or suspend alimony, consistent with the New Jersey statute and case law. Cohabitation shall be defined by New Jersey law at that time." Under N.J.S.A. 2A:34-23(n):

> Alimony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.
>
> When assessing whether cohabitation is occurring, the court shall consider the following:
>
> (1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;
>
> (2) Sharing or joint responsibility for living expenses;
>
> (3) Recognition of the relationship in the couple's social and family circle;

(4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5) Sharing household chores;

(6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.] 25:1-5; and

(7) All other relevant evidence.

The New Jersey Supreme Court recently provided a framework for our consideration of cohabitation issues in Cardali v. Cardali, 255 N.J. 85 (2023). There, the Court held:

> We do not view . . . N.J.S.A. 2A:34-23(n) . . . to require evidence of a financial relationship between the spouse or civil union partner receiving alimony and the other person as a prerequisite to discovery; as a practical matter, such a showing may be impossible without discovery. Accordingly, we hold that a movant need not present evidence on all of the cohabitation factors in order to make a prima facie showing. If the movant's certification addresses some of the relevant factors and is supported by competent evidence, and if that evidence would warrant a finding of cohabitation if unrebutted, the trial court should find that the movant has presented prima facie evidence of cohabitation.
>
> If the movant presents such prima facie evidence, the court should grant limited discovery tailored to the issues contested in the motion, subject to any protective order necessary to safeguard confidential information. If material facts remain in dispute after discovery and

9

> the filing of supplemental certifications, the court must conduct a plenary hearing before deciding the motion to terminate or suspend alimony.
>
> [Id. at 94-95.]

We have "reject[ed] the argument that evidence of all the[] circumstances must be presented for a movant to establish a prima facie case of cohabitation." Temple, 468 N.J. Super. at 370. Additionally, "[t]he statute contains a seventh item, which allows a court's consideration of '[a]ll other relevant evidence,' N.J.S.A. 2A:34-23(n)(7), thereby demonstrating the statute does not contain the alpha and omega of what ultimately persuade a court that a support spouse is cohabiting." Ibid. (second alteration in original).

"It is enough that the movant present evidence from which a trier of fact could conclude the supported spouse and another are in 'a mutually supportive, intimate personal relationship' in which they have 'undertaken duties and privileges that are commonly associated with marriage or civil union.'" Id. at 371. (quoting N.J.S.A. 2A:34-23(n)).

Governed by these standards, we are convinced the judge undertook the appropriate analysis of Gary's allegation concerning Susana's cohabitation. The judge's decision analyzed the facts; applied the factors outlined under N.J.S.A.

2A:34-23(n); and gave due consideration to the burdens established by <u>Cardali</u> and <u>Temple</u>. Thus, we discern no abuse of discretion.

Gary contends Susana's failure to "produce bills or make a financial disclosure" should have precluded the judge from finding no bills were shared; there were no joint accounts; and no financial "intertwinement" existed. However, this contention misses the mark in two respects. First, Susana had no obligation to produce her financial information until Gary established a prima facie showing of cohabitation. Only after a movant "presents such prima facie evidence, should the court grant limited discovery." <u>Cardali</u>, 255 N.J. at 95. Second, the judge appropriately performed her judicial function by considering the facts presented and analyzing those facts under the factors provided by N.J.S.A. 2A:34-23(n).

Gary also contends the judge should have considered Susana's domestic violence restraining order against him because the order "wholly precluded" his investigation into her cohabitation, except through the use of a private detective. Again, this contention misses the mark. Gary bears no lesser burden in establishing a prima facie case of cohabitation merely because he is bound by a domestic violence restraining order.

A-0251-22

In short, we agree with Judge Francois that Gary failed to establish a prima facie case that Susana was cohabitating with her boyfriend. As the judge noted, Susana is permitted to have a dating relationship. Gary failed to establish prima facie that Susana's dating relationship rose to the level of "a mutually supportive, intimate personal relationship in which [she and her boyfriend] ha[d] undertaken duties and privileges that are commonly associated with marriage" as required by N.J.S.A. 2A:34-23(n).

As to Susana's cross-appeal and her request that Gary should have been ordered to pay her attorney's fees, we note Rule 4:42-9(a)(1) provides "[i]n a family action, a fee allowance both pendente lite and on final determination may be made pursuant to R[ule] 5:3-5(c)." Courts should consider the following factors:

> (1) the financial circumstances of the parties;
>
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
>
> (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;
>
> (4) the extent of the fees incurred by both parties;
>
> (5) any fees previously awarded;
>
> (6) the amount of fees previously paid to counsel by each party;

A-0251-22

(7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

Here, Susana argues the judge erred by placing too much weight on the parties' ability to pay. We disagree, and discern no abuse of discretion in Judge Francois's denial of Susana's request for the payment of her attorney's fees and costs. Instead, we are convinced the judge undertook the appropriate analysis of the facts under the Rules of Court and properly applied the factors outlined under Rule 5:3-5(c).

Such factors included the parties' "financial circumstances" and "ability to pay" their own fees or contribute to the other party's fees. The record supports the judge's exercise of discretion in determining Susana could pay her own fees.

Next, Susana contends Gary filed his motion in "bad faith." However, where "a party advances a legal position reasonably supported which the court rejects, [it] is not the equivalent of 'bad faith.'" Slutsky v. Slutsky, 451 N.J. Super. 332, 367 (App. Div. 2017) (citation omitted). "Examples of bad faith include misusing or abusing process, seeking relief not supported by fact or law,

intentionally misrepresenting facts or law, or otherwise engaging in vexatious acts for oppressive reasons." Ibid. These circumstances do not exist here.

Lastly, Susana argues the judge failed to consider she was "previously awarded" fees in the domestic violence trial. However, we find this argument unavailing. The analysis for an award of counsel fees in a domestic violence trial differs from the fee analysis in a post-judgment matrimonial matter. In a divorce action, "the purpose of the [attorney's fee] award is to equalize the positions of the parties . . . and to provide the needier individual with the financial means of prosecuting or defending a court action." DiGiacomo v. DiGiacomo, 256 N.J. Super. 404, 410 (App. Div. 1992) (citation omitted). But in a domestic violence matter, "reasonable attorney's fees" are considered a compensatory damage. A "defendant [is ordered] to pay to the victim monetary compensation for losses suffered as a direct result of the act of domestic violence." N.J.S.A. 2C:25-29(b)(4). Included within the losses is "reasonable attorney's fees." Ibid.

Any remaining arguments raised by the parties are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                          A-0251-22